UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

ALEXANDER J. SANTIAGO

Case No. 3:21MJ_____(RMS)

**Filed Under Seal**

### Affidavit in Support of Criminal Complaint and Arrest Warrant

I, Matthew G. Hancock, a Task Force Officer with the Federal Bureau of Investigation, being duly sworn, state:

### Introduction

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I have been employed as a State Trooper with the Connecticut State Police in the Central District Major Crime Division since June 2015. Before that, starting in March 2014, I was a member of the New Haven Police Department. Since July 2018, I have been a Task Force Officer with the Federal Bureau of Investigation (FBI). I am currently assigned to the Safe Streets Gang Task Force Squad in the FBI's New Haven Field Office. As a Task Force Officer, I have been the principal investigator in investigations involving narcotics and firearms trafficking, violent gang and criminal enterprises, drug trafficking organizations, and interstate theft rings. As a result of my training and experience, I am familiar with federal criminal law, including laws concerning the interstate transport of stolen vehicles and property.

3. I submit this affidavit in support of a criminal complaint and arrest warrant for **Alexander J. Santiago** (birth year 1994) for violations of 18 U.S.C. § 2314 (transporting stolen property), § 2315 (possessing stolen property), and § 371 (conspiracy).

4. The facts in this affidavit come from my personal observations; my training and experience; my conversations with other police officers, agents, and task force officers; my review of reports and video surveillance; and information obtained from other witnesses. This affidavit is intended to show merely that there is probable cause for the requested criminal complaint and arrest warrant and does not set forth all my knowledge about this matter.

### Probable Cause

Background on the Target Organization

5. The FBI is investigating a criminal organization that, since July 2020 or earlier, has been conducting coordinated burglaries of new-car dealerships, mobile phone stores, and check cashing businesses in Connecticut, New York, and elsewhere, often hitting multiple locations in one night (the "**Target Organization**"). The Target Organization's members tend to travel in one vehicle from New York to Connecticut and then force entry into one or more car dealerships, phone stores, or check cashing businesses. From dealerships, they steal vehicle key fobs (typically driving away with one or more stolen vehicles). From mobile phone stores, they steal cell phones, electronics, and other accessories. And from check cashing businesses, they steal onsite Automated Teller Machines (ATMs). They then transport the stolen vehicles or property from Connecticut to New York. Police have encountered members of the Target Organization numerous times during these burglaries, but the suspects generally have escaped by engaging the police in high-speed chases, which the police must terminate for safety reasons. The Target Organization is suspected in over 130 burglaries, with total stolen property estimated to be in the millions of dollars.

6. There is probable cause to believe that Santiago is a member of the Target Organization. He is a known associate of **Joseph Y. Cartagena** (birth year 1996). Cartagena has been indicted on charges stemming from this investigation, specifically, conspiracy to steal vehicles and transporting and possessing stolen vehicles, in violation of 18 U.S.C. §§ 371, 2312, and 2313. *See* Case No. 20cr261(MPS)(SALM). On December 23, 2020, Cartagena was arrested on those charges after an all-day search in the New York City area during which he escaped law enforcement multiple times, dropped a firearm, and rammed FBI vehicles with his vehicle to escape, before he was ultimately captured late at night. On December 28, 2020, United States Magistrate Judge Sarah A. L. Merriam ordered Cartagena detained, without prejudice to a later motion for pretrial release.

7. Cartagena and Santiago are pictured below, standing in front of suspected stolen Dodge Charger SRT Hellcats. The Target Organization has stolen Hellcats and used them as getaway vehicles during burglaries. The vehicle on the left (behind Cartagena) is model year 2020. A white 2020 Dodge Charger SRT Hellcat was stolen from a Danbury, Connecticut dealership on July 25, 2020, and a key fob for that exact vehicle was seized from Cartagena's residence pursuant to a warrant on December 23, 2020. The vehicle on the right (behind Santiago) is an earlier model Hellcat. This photograph was extracted from one of Cartagena's phones pursuant to a search warrant:



8. During my investigation, I have seen videos, generally from the summer and fall 2020 timeframe, that depict Santiago's and perhaps others' dangerous operation of vehicles on major roadways. The videos, filmed from inside the vehicles (including Dodge Chargers; possibly Hellcats), have titles that refer the name of the vehicle (including "Hellcat") and a particular roadway. In the videos, the vehicle's operator drives at high speeds on crowded roadways, weaving recklessly through traffic, using shoulders and exit ramps to pass other drivers. Santiago can be observed operating the vehicle in at least one video.

9. Another video, extracted from Cartagena's phone pursuant to a search warrant, shows a male matching the physical description of Santiago operating a Dodge Charger. A yellow "emoji" covers his face. In the video, Santiago, along with two passengers, travel on a highway next to a police vehicle. The police vehicle slows to position itself behind Santiago and initiates its lights and siren. Santiago and the other passengers in the vehicle begin laughing as Santiago accelerates his vehicle and escapes at a high speed.

### Text message conversations between Santiago and Cartagena

10. Text messages extracted from one of Cartagena's phones show Cartagena conversing with a phone number I know to belong to Santiago. On December 21, 2020, from 2:18 p.m. to 3:07 p.m., the two discuss the movement of a stolen vehicle and stolen property, and the value of the stolen property. The text in brackets is my understanding of the phrases being used based on my training and experience, the context of the conversation, and my participation in this investigation:

> AS: Wyfw [Who you fucking with?]
> JC: I'm boutta go take the red rav [Toyota Rav4] to the [N-word redacted]
>     Take this jack [phone] from the rav
>     Why ya put this in here?
> AS: We found dat jakk
> JC: Oh

11. Cartagena's phone contains a picture of a red Toyota Rav4 bearing a New Jersey license plate with no record, likely indicating a plate that was once registered but canceled after the registration expired. The conversation continues and Cartagena explains he is taking stolen phones to an unknown person "steph":

> AS: U tryna go boy our gma ha xhain [unintelligible]
> JC: Yea
> AS: Igh ima klean up then push out
> JC: IM taking sum, jack's [phones] to steph [unknown person]
> AS: Bet [okay]
> JC: 1-5
>     K worth
>     15

12. Cartagena then sent the following photograph to Santiago of a list of iPhones and apparent prices, totaling over $13,000, which I believe are prices for stolen merchandise given the context and the fact that they are substantially below the retail value of the listed items:

5



13. Cartagena continues, stating that he will send phones to Santiago and to "Steph" and listing additional quantities of phones and a total asking price of $15,000:

> JC: That's what I gave to cro [unknown person]
>
> Yesterday
>
> And the rest from the last batch
>
> This batch I'm send you now
>
> That I'm giving to Steph
>
> 3- 128 GB pro max
>
> 4- 256 GB pro max
>
> 1-512 gb
>
> 7- Iphone 12
>
> 3- Iphone SE 64
>
> 15 k
>
> We askin for
>
> From the [N-word redacted]
>
> AS: [sends okay emoji]

6

>JC: For that
>
>AS: Bet [okay]

14. Later that evening, at 6:46 p.m., Santiago and Cartagena discuss Santiago's getting his "cut" from the stolen Rav4 they discussed earlier that day:

>AS: Wya [where you at]
>
>JC: I'm here
>>Come get ya cut from the red rav
>>He gave us 1000
>>Me you Nd cro

15. Several hours later, on December 22, 2020 between 12:37 a.m. and 1:07 a.m., Santiago and Cartagena appear to discuss meeting up, and Cartagena provides the address of a check cashing business in Greenwich, Connecticut:

>AS: Yo u boomin out or na?
>>Wyd [what are you doing] dikk head
>>We about to push out
>
>JC: 6 n water st Greenwich ct [the address of a check cashing business]
>>I need to fill up
>>Yo dik head
>>You got that Addy [address] I sent you?
>>That's a cash checkin
>>No gate [no security gate]
>
>AS: Bet [okay]

16. The FBI is not aware of any later burglary of the check cashing business identified by Cartagena. However, I believe Cartagena had cased the location for a potential burglary, which was prevented when the FBI arrested Cartagena on December 23 (less than 48 hours after the conversation above).

17. The next evening, at 9:23 p.m., Cartagena complains to Santiago about an unknown person's poor performance during an apparent burglary and explains that the crew was only "good" because Santiago was also on lookout duty:

> AS: Word up u rested tho
> JC: Yea
> Blood [unknown person] gotta work tn
> He pullin everything
> [N-word redacted] don't even look out properly
> Shit bad vibes
> Yesterday [N-word redacted] was not on no blok near us
> Shit unprofessional
> We was only good cuv you was look out too
> Nd hlpin us if not
> That [N-word redacted] don't spot shit
> Put him inside
> Only [N-words redacted] that could drive should be behind the wheel
> We can't afford no fuk ups
> Not wit ths movement
> AS: Type shit

18. Based on my training and experience, the context of the conversation above, and my participation in this investigation, I believe that these text messages show Cartagena and Santiago discussing plans for stealing or for divvying up the proceeds of stolen vehicles, cell phones, and ATMs.

ATM burglary, search of Santiago's residence, and Santiago's arrest

19. Santiago's last known address is 2735 Lawton Avenue, Bronx, New York, and he was arrested by NYPD at that address in the evening of January 15, 2021. The arrest occurred during the FBI's execution of a federal search warrant for the premises issued by United States

Magistrate Judge Ona T. Wang, Southern District of New York, in connection with this investigation. This was the same address Cartagena provided as his home address after his arrest.

20. The search of 2735 Lawton returned evidence that Santiago and possibly other residents at that address are engaged in the transportation and possession of stolen vehicles and property. Specifically, the search returned approximately twenty brand-new cell phones in boxes, approximately forty vehicle key fobs, a few thousand dollars in cash, a New York/ Connecticut police radio, and a window glass punch (the Target Organization is suspected to have used glass punches to force entry in prior burglaries). The search also returned two firearms (a short pistol and a seemingly homemade muzzleloader pistol) and a substantial quantity of ammunition, which was scattered and hidden around the residence, including in a jacket pocket in the hallway closet, the bottom of multiple drawers, and on the floor of a bedroom. Santiago also had eight bullets in his pants pocket at the time of his arrest by NYPD.

21. The FBI received court authorization to search 2735 Lawton after the burglary of a New Rochelle, New York ATM from a check cashing business earlier that day. Specifically, on January 15, 2021, around 3:00 a.m., police responded to a burglary alarm at a check cashing business in New Rochelle. At the scene, police observed that someone had broken the glass front door of the business and stolen an ATM machine. The business's surveillance cameras showed the suspects arrive and depart in a white Toyota Sienna with rear license plate PA KJS5038.

22. I know this particular vehicle and license plate well. My review of Cartagena's phones pursuant to a search warrant has revealed dozens of photographs of stolen electronics and motor vehicles, including multiple pictures of a white Toyota Sienna bearing license plate KJS5038 (the exact color, make, model, and registration of the vehicle that stole the ATM from New Rochelle):



23.     My review of Cartagena's phones has also revealed evidence of a scheme to burglarize check cashing businesses and to steal ATMs. This includes dozens of photographs of check cashing businesses, including the one pictured below, which is a different location but the same chain as the location burglarized the morning of January 15, 2021, suggesting that Cartagena was casing these locations:



24.     The FBI found further evidence of an ATM theft scheme in a stolen vehicle that Cartagena abandoned as he attempted to flee on foot, moments before his arrest on December 23, 2020. Law enforcement queried the Vehicle Identification Number (VIN), which revealed the

vehicle (a Jeep Grand Cherokee) was stolen on December 10, 2020 from a dealership in Fairfield, Connecticut. An inventory search of it returned items from suspected prior burglaries, like this smashed ATM cash box:



25.     Turning back to the ATM burglary on the morning of January 15, 2021: About twenty minutes after police responded to the New Rochelle check cashing business, a New York License Plate Reader (LPR) captured the Sienna and its Pennsylvania license plate traveling in New Rochelle. Law enforcement observed no further LPR hits on that Pennsylvania plate. But around 4:18 a.m. (an hour later), law enforcement observed a hit on New Jersey plate B73MYE, a reported stolen plate. The LPR hit showed the New Jersey plate affixed to the rear of a white Toyota Sienna, traveling south on Saw Mill River Parkway toward New York City. In prior burglaries, the Target Organization has switched the license plates on a suspect vehicle at some point after fleeing the scene of the burglary. I believe the suspects did so here.

26.     Police in Yonkers, New York attempted to stop the Sienna, but the Sienna engaged police in a high-speed pursuit, as the Target Organization has a history of doing. The police terminated pursuit moments later as the Sienna entered New York City limits.

27.     Later that day around 10:45 a.m., the FBI conducted surveillance at 2735 Lawton Avenue in the Bronx, New York. There, the FBI observed the Sienna with the New Jersey license plate that had been captured by the LPR earlier that morning, parked in the driveway. Moments after, the FBI observed the Sienna drive away; the FBI briefly followed the Sienna but terminated surveillance as the vehicle approached the Throgs Neck Expressway.

28.     Later that evening, back at 2735 Lawton, while the FBI awaited issuance of a search warrant for the property, Santiago arrived at the residence driving the Sienna observed earlier. Santiago, his younger brother **Luis David Santiago** (birth year 1998), and three women were present when the search was executed, along with a child approximately seven years old. When the FBI knocked and announced, Santiago opened the window curtain, observed law enforcement, and ran to a back room. As FBI agents entered the residence, Santiago released a pit bull, and the pit bull attacked and bit an FBI agent. Law enforcement was able to restrain the pit bull and execute the search warrant. NYPD officers arrested Santiago on an existing state arrest warrant for assault charges, and they arrested his brother Luis for state weapons charges, based on the firearms and ammunition found at the residence. Santiago is currently detained at Yonkers Police Department.

<u>Santiago's interstate transport and possession of stolen property on November 20, 2020</u>

29.     Members of the Target Organization have been challenging to conclusively identify because they wear masks and hats/hoods, constantly switch getaway vehicles, use license plates that are either stolen or unregistered, and then flee at high speeds when they encounter law enforcement. However, as discussed below, law enforcement was able to identify Santiago as a participant in a string of burglaries followed by a high-speed chase on November 20, 2020 in Connecticut. And charging the remaining members of the conspiracy is simply a matter of time.

30. On November 20, 2020, around 3:46 a.m., police responded to a burglary alarm at a Verizon store on Post Road in Westport, Connecticut. When the police arrived, the suspects were gone, but a glass door at the store had been broken, indicating forced entry (the Target Organization is known to target locations where entry can be forced through a glass door or window, and the suspects often use a glass-punch device to break in). Surveillance video from the store shows the suspects arriving and leaving in a dark gray Toyota Highlander, bearing Pennsylvania license plate KPS3171. The suspects stole approximately twenty iPhones, worth approximately $15,750 total. As depicted below, the suspects carried black trash bags and wore masks and hoods/hats. The person in the lead (tan boots) was later identified as Santiago; the other two people (heavyset man in the middle and medium-build man in the rear) are other targets of the investigation:



31. A short time later, around 4:16 a.m., police responded to a burglary alarm at a Verizon store on Canal Street in Stamford, Connecticut (about a fifteen-minute trip south on I-95). When the police arrived, as with the Westport store, no suspects were present, and the front glass door had been broken. Another door leading to the store's office appeared to have been kicked in. However, no property was missing; the door to the rear office where inventory is kept

had been secured. Surveillance video showed three suspects entering and then exiting the store shortly after. The first image below depicts Santiago in the foreground dashing toward the back of the store, the heavyset suspect struggling to enter the hole in the glass door, and the third suspect outside the door, waiting to enter. The second image below depicts the heavyset and third suspects waiting for Santiago before they leave:





32. By this time, law enforcement in the area had received a BOLO (Be on the Lookout) notice concerning possible burglaries of local phone stores. Greenwich police detailed patrol cars to monitor phone store locations in Greenwich. Around 4:30 a.m., an officer observed

a dark-colored vehicle, later confirmed to be the same Toyota Highlander observed in Westport and Stamford, driving with its lights off in the vicinity of an AT&T store (less than ten minutes away from the Stamford Verizon). The officer attempted a motor vehicle stop, but the Highlander sped away.

33.     Another officer who was monitoring traffic in the area responded to assist. He encountered the Highlander at a stop sign (intersection of Indian Field Road and Morningside Drive in Greenwich) and activated his lights and siren to attempt a stop. The Highlander then sped into a residential neighborhood made up of Morningside Drive and Circle Drive, which form a no-outlet loop just off I-95:



34.     One officer pursued the Highlander westbound on Morningside Drive, while another officer traveled down Circle Drive to attempt to cut off the Highlander. The first officer then observed the Highlander stop abruptly, and two suspects jumped out (driver and passenger). At this time, the officer observed that the Highlander bore rear license plate Pennsylvania KPS3171 (the same as Westport and Stamford). The officer advised other responding officers of an impending foot pursuit, but the suspects simply swapped seats in the Highlander and then

15

sped away, back toward Indian Field Road. On the way out of the neighborhood, the Highlander sped head-on at a responding patrol vehicle, and then did so again when it encountered two other responding patrol vehicles, swerving out of the way at the last second to narrowly avoid a collision both times. The Highlander then rocketed onto I-95 southbound at exit 4, and police stopped pursuit as the Highlander left Connecticut and continued into New York.

35. Greenwich police then traveled to the AT&T store near the initial observation of the Highlander. Police observed that the front glass door of the store had been smashed. Surveillance footage shows two of the suspects from Westport and Stamford break the glass using an unknown device, ransack the store, and then leave with armfuls of merchandise including wireless speakers and other accessories. I estimate the value to be a few thousand dollars' worth of items; the store owner has not provided a list of stolen items. The two suspects who entered the Greenwich AT&T are shown below:



36. Based on the DNA evidence discussed below, and based on his appearance, I believe the person on the right to be Santiago (I am very familiar with Santiago's appearance based on his presence during the execution of the search warrant at 2735 Lawton). The person on

16

the left is another target in the investigation. And I believe the third suspect was waiting outside as a lookout/ getaway driver:

37.     At the scene of the Westport Verizon burglary, officers found a glove left behind by one of the suspects. The glove matches the bright-orange-backed glove observed on the lead, tan-boots person in the picture from Westport (the person appears to have put on different, all-gray gloves before the Greenwich break-in, as shown above on the right):



38.     Greenwich police submitted the orange glove to a lab for DNA testing. On January 5, 2021, the lab reported that the sample matched a DNA record for Santiago. Based on my training and experience, I know that a DNA match of this type is highly reliable.

39.     The Westport-Stamford-Greenwich incidents mirror a string of burglaries involving Cartagena, as alleged in the December 16, 2020 criminal complaint against him. Specifically, on July 29, 2020, Cartagena and two accomplices arrived in one getaway vehicle (a white Hellcat) and forcibly entered a Madison car dealership, then a Guilford AT&T store, then a Milford car dealership. Each location was a short drive from the next along Boston Post Road, and in each case, Cartagena and accomplices forcibly entered by breaking a glass door or window. They stole over $20,000 in phones from the Guilford AT&T, and one vehicle from the Milford dealership, but nothing from Madison where the key fobs were located in a secure area (similar to the Stamford Verizon on November 20 when the suspects quickly left after seeing that the inventory was secured). At the Guilford AT&T on July 29, Cartagena entered the store

through a broken pane of glass. One of his accomplices, a heavyset individual, attempted to enter through the same opening but could not:



40.     I believe this individual to be the same person seen in the Westport, Stamford, and Greenwich surveillance videos from November 20, 2020, as his appearance matches an individual I know to be associated with both Cartagena and Santiago. This indicates a mutual accomplice between Santiago and Cartagena.

41.     For the reasons above, there is probable cause to believe that Santiago was present at the Westport Verizon burglary, participated in the burglary of that location and the Greenwich AT&T and the attempted burglary of the Stamford Verizon, and transported or caused the transport of phones and electronics stolen from those locations, the value of which exceeded $5,000, from Connecticut to New York, and also possessed that stolen property after interstate transport.

42.     Additionally, based on the relationship between Cartagena and Santiago, their participation in burglaries executed using the same tactics and a mutual accomplice, and the evidence seized from Cartagena's phone including the photographs and text messages discussed

above, there is probable cause to believe that Santiago conspired with Cartagena and others to transport and possess stolen vehicles and property.

## Conclusion

43.    Based on the foregoing, there is probable cause to believe that Alexander J. Santiago violated 18 U.S.C. § 2314 (transporting stolen property), § 2315 (possessing stolen property), and § 371 (conspiracy).

*TFo [signature]*
MATTHEW G. HANCOCK
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn before me by telephone on
January 19, 2021, in New Haven, Connecticut.

_____
HON. ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE